McCLENDON, J.
Defendant, Michael Joseph Brooks, Jr., was charged by grand jury indictment with one count of molestation of a juvenile (under the age of thirteen years), a violation of LSA-R.S. 14:81.2 (count 1), and two counts of aggravated rape (of a victim under the age of thirteen years), violations of LSA-R.S. 14:42 (prior to amendment, which redesignated aggravated rape as first degree rape) (counts 2 and 3). He entered a plea of not guilty and, following a jury trial, was found guilty as charged on counts 1 and 3; he was found not guilty on count 2. Defendant filed a motion for post-verdict judgment of acquittal, which was denied. On count 1, defendant was sentenced to twenty-five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; on count 3, he was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. The sentences were ordered to run concurrently. Defendant now appeals, designating one counseled assignment of error and two pro se *948 assignments of error. We affirm the molestation of a juvenile conviction and sentence; we affirm the aggravated rape conviction, amend the sentence to include that it be served at hard labor, and affirm as amended.
FACTS
The mother of eight-year-old daughter S.W.[1] married defendant in February of 2009. They lived in Houma. Before the marriage, S.W.'s mother and defendant lived together for two years, each with children from previous relationships. According to S.W., when she was in the first grade (prior to her mother's and defendant's marriage), defendant put his finger in her vagina when she was taking a bath. At the time, she did not tell anyone of the incident. Several years later, according to S.W., when she was eleven years old, she and defendant were in a closet at their home in Dularge. There, defendant vaginally raped S.W. At the time, she did not tell anyone of the incident. In 2013, when she was thirteen years old and attending Evergreen Junior High School, S.W. told a guidance counselor what defendant had done to her. The school then contacted S.W.'s mother, who informed the police. Defendant did not testify at trial.
COUNSELED AND FIRST PRO SE ASSIGNMENT OF ERROR
In his sole counseled assignment of error, defendant argues the State did not prove beyond a reasonable doubt that he committed molestation of a juvenile or aggravated rape and, as such, the evidence was insufficient to support either conviction. In his pro se assignment of error, defendant argues the evidence was insufficient to support his convictions for molestation of a juvenile and aggravated rape.
Counseled Sufficiency Assignment of Error
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV ; LSA-Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See LSA-C.Cr.P. art. 821B; State v. Ordodi, 06-0207 (La. 11/29/06), 946 So.2d 654, 660 ; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 01-2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
At the time of the offense, LSA-R.S. 14:42 provided, in pertinent part:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * *
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.
*949 Louisiana Revised Statutes 14:41 provides, in pertinent part:
A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
Also, LSA-R.S. 14:81.2A(1) provides:
Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
A lewd and lascivious act is an act that is lustful, obscene, indecent, tending to deprave the morals in respect to sexual relations, and relating to sexual impurity or incontinence carried on in a wanton manner. State v. Graham, 13-1806 (La.App. 1 Cir. 7/3/14), 148 So.3d 601, 606. Specific intent need not be proven as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. Id.
Defendant suggests in brief that the evidence of these crimes was insufficient because S.W.'s testimony and the statements that she made to certain people were "riddled with internal contradictions and inconsistencies." For example, S.W. testified that the bathtub incident (when defendant put his finger in her vagina) occurred when she was five or six years old. According to S.W., defendant had checked her out of school (first grade) because she was sick; when they got home, defendant made her take a bath. Defendant notes in brief that most of S.W.'s school records at this time had been destroyed, and there was no record of who checked out S.W. or why she was checked out. Further, according to defendant, school records indicated that he "would have been available to check her out on only one occasion, August 27, 2007." Defendant further notes that S.W, was seven years old on August 27, 2007. Defendant further suggests S.W's trial testimony was inconsistent with statements that she made to her mother and to Detective Tara Whitney, with the Terrebonne Parish Sheriff's Office, who handled S.W.'s case. Defendant notes that Detective Whitney testified that S.W. told her that she (S.W.) told her mother for the first time about the sexual abuse by defendant the day her mother and defendant got married which, according to S.W., was September of 2010. Further, according to defendant in brief, S.W. told the detective (per the detective's testimony) that there was domestic violence between defendant and S.W.'s mother on her wedding day because of S.W.'s disclosure of sexual abuse; and both defendant and S.W.'s mother, according to S.W. were issued a summons. Defendant suggests in brief that "none" of what S.W. said regarding the wedding and subsequent domestic violence is true. According to defendant, there was no incident in September of 2010; rather, there was a report of domestic violence in January of 2010, and a summons was issued only to S.W.'s mother. Further, defendant notes, defendant and S.W.'s mother were married on February 15, 2009, not in September of 2010.
*950 S.W.'s testimony, if believed, established that defendant, on separate occasions, molested her and raped her. According to S.W., she was in the first grade and living at "Colonial Village" apartments with her mother, defendant, and siblings. S.W. testified that defendant had checked her out of school and, when they got home, he told her to take a bath. The defendant went into the bathroom with her and, while S.W. was bathing, defendant told her she was not taking "a bath right," so he bathed her. While she was standing in the tub, according to S.W., defendant put his finger in her vagina. Defendant stopped when S.W. said she was going to tell her mother. Defendant replied to this that S.W. would get in trouble.
On a later occasion, when she was eleven years old, S.W. was living with her family in a house in Dularge on Riley Drive. There was a very large walk-in closet in the house, wherein S.W. and her siblings played and S.W. sometimes slept. There was a dresser and a television in the closet. According to S.W., sometime in 2011, she and defendant were in the closet. Defendant got behind S.W., pulled her shorts down, and told her to bend over. S.W. complied. According to S.W., defendant then put the tip of his penis in her vagina. Defendant pushed S.W., and she hit the wall with her head. She then left the closet and went outside. Louisiana Revised Statutes 14:41B provides that "[e]mission is not necessary" and that "any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime." See State v. Rives, 407 So.2d 1195, 1197 (La. 1981).
Alton Johnson, the Terrebonne Parish School Board Supervisor of Child Welfare and Attendance, testified at trial that S.W. attended Broadmoor Elementary for first grade in 2006 and 2007.[2] Johnson indicated that attendance records showed that S.W. had been checked out of school on December 15, 2006, and on August 22, 2007. On both days, she had been checked out at 12:35 p.m. According to Johnson, there was nothing in the documentation to show who checked out S.W. or the reason for being checked out.
Regarding the alleged rape incident, defendant notes that S.W. was asked to read an account of the alleged sexual abuse by defendant that she had handwritten in a letter. In this letter, S.W. mentions the bathtub incident and another incident in 2010 in a closet; the letter, however, does not contain any account of the rape that S.W. had alleged occurred in the same closet. Defendant suggests in brief that it is "highly unlikely that if she had been raped in a closet" when she was eleven years old that she would have forgotten it.
Regarding the alleged crimes for which defendant was convicted, a reasonable trier of fact could have concluded that, despite any inconsistencies or contradictions, S.W. was being truthful when she testified that defendant, on one occasion, had put his finger in her vagina, and a few years later on another occasion, defendant vaginally raped her. The jury could have reasonably concluded that, given S.W.'s very young age at the time of these incidents, she was unable to remember exact dates and times, or to recall specific details surrounding the incidents. Dr. Jamie Jackson, an expert in pediatrics, testified at trial that delayed disclosure was common among sexual abuse victims, and that such disclosure could sometimes take years.
In any event, the foregoing arguments raised by defendant are credibility issues. The jury heard the testimony and viewed the evidence presented to it at *951 trial and found defendant guilty as charged (on counts 1 and 3). In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins, 03-1980 (La. 4/1/05), 898 So.2d.1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La.App. 1 Cir. 1985). See State v. Weary, 03-3067 (La. 4/24/06), 931 So.2d 297, 311-12, cert. denied, 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006).
When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1 Cir.), writ denied, 514 So.2d 126 (La. 1987). The testimony of the victim alone is sufficient to prove the elements of the offense. State v. Orgeron, 512 So.2d 467, 469 (La.App. 1 Cir. 1987), writ denied, 519 So.2d 113 (La. 1988). See Rives, 407 So.2d at 1197 (La. 1981). The jury's verdicts reflected the reasonable conclusion that, based on S.W.'s testimony, defendant molested and raped her. In finding defendant guilty, the jury clearly rejected the defendant's theory of innocence. See Moten, 510 So.2d at 61.
After a thorough review of the record, we find the evidence supports the jury's verdicts. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that defendant was guilty of molestation of a juvenile and aggravated rape. See State v. Calloway, 07-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).
The counseled assignment of error is without merit.
Pro Se Sufficiency Assignment of Error
In his pro se brief, defendant makes the same credibility and lack of corroboration arguments regarding both convictions. In particular, he raises no new issues regarding the sufficiency of the aggravated rape conviction, which has been fully addressed in the counseled assignment of error.
Regarding the molestation of a juvenile conviction, defendant raises a new issue; he argues the State failed to prove that he committed the lewd or lascivious act by use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. See State v. Leblanc, 506 So.2d 1197 (La. 1987). This element of the offense is disjunctive and *952 proof of either-the "use of force" element or the "supervision and control" element-satisfies the element See State v. Dale, 50,195 (La.App. 2 Cir. 11/18/15), 180 So.3d 528, 534-35, writ denied, 15-2291 (La, 4/4/16), 190 So.3d 1203 ; State v. Moses, 615 So.2d 1030, 1034 (La.App. 1 Cir.), writ denied, 624 So.2d 1223 (La. 1993).
According to defendant, the State failed to prove either the "use of force" element or the "supervision and control" element. We do not agree. While the evidence did not establish that defendant used force on S.W., the evidence clearly established he used his position of authority to molest S.W. By conflation, defendant avers in brief that, pursuant to the Leblanc decision, the State was required to prove that "by the exertion of influence over the child," he must have effectively forced S.W. to participate in the lewd acts. This is incorrect. Under the "supervision and control" element, the law requires that the. molestation be accomplished by virtue of control and/or supervision of the juvenile. Moreover, the Leblanc decision had nothing to do with the "supervision and control" element. It addressed and discussed only the "use of force" element. See Leblanc, 506 So.2d at 1199 n.4.
In the instant matter, prior to marrying defendant in early 2009, S.W.'s mother lived with defendant and their children, including S.W., for about two years. The record supports a finding that in 2007, when defendant was living with them, defendant checked S.W. out of school and told S.W. to take a bath and how to bathe. During this time, S.W.'s mother worked.
The foregoing facts established that defendant had authority or supervision over S.W. Defendant was clearly placed in a position of trust by S.W.'s mother. While defendant was not S.W.'s stepfather at the time of the molestation, he took on the role of guardian of S.W. and perpetrated the molestation by virtue of control and/or supervision. No biological relationship between the offender and the victim is required. See State v. Ellis, 38,740 (La.App. 2 Cir. 8/18/04), 880 So.2d 214, 219. See also State v. Kennon, 34,455, 34,456 (La.App. 2 Cir. 2/28/01), 781 So.2d 734 ; State v. Welch, 99-1283 (La. 4/11/00), 760 So.2d 317 ; State v. Hillman, 613 So.2d 1053 (La.App. 3 Cir.), writ denied, 617 So.2d 1181 (La. 1993). The jurisprudence, rather, has interpreted the "supervision and control" element of molestation of a juvenile to be satisfied by someone who has emotional control over the victim, as well as by someone who is a live-in boyfriend, non-custodial parent, babysitter, relative, friend, a pastor, and neighbor. State v. Roy, 15-515 (La.App. 3 Cir. 11/4/15), 177 So.3d 1103, 1109. See State v. Davis, 47, 599 (La.App. 2 Cir. 1/16/13), 108 So.3d 833, writ denied, 13-0381 (La. 9/20/13), 123 So.3d 163 ; Kennon, 781 So.2d 734.
This pro se assignment of error is without merit.
PRO SE ASSIGNMENT OF ERROR NO. 2
In his second pro se assignment of error, defendant argues the trial court erred in accepting a non-unanimous jury verdict.[3]
Defendant argues he was denied his due process by the trial court's instruction to the jury regarding a non-unanimous verdict. Specifically, defendant contends that LSA-C.Cr.P. art. 782A and the Louisiana Constitution provision for non-unanimous jury verdicts violate the Fourteenth Amendment's Equal Protection Clause of the United States Constitution. According to defendant, the enactment of *953 LSA-Const. art. I, § 17 (A) was motivated "by an express and overt desire to discriminate against blacks on account of race" and has had a racially discriminatory impact since its adoption.
Eleven of the twelve jurors found defendant guilty of both molestation of a juvenile and aggravated rape. It is well-settled that a constitutional challenge may not be considered by an appellate court unless it was properly pleaded and raised in the trial court below. A party must raise the unconstitutionality in the trial court, the unconstitutionality must be specially pleaded, and the grounds outlining the basis of unconstitutionality must be particularized. See State v. Hatton, 07-2377 (La. 7/1/08), 985 So.2d 709, 718-19. In the instant case, defendant failed to raise his challenge to Louisiana Constitution Article I, § 17 (A) in the trial court. Accordingly, the issue is not properly before this court.
We nevertheless address the issue. Louisiana Constitution article I, § 17 (A) and Louisiana Code of Criminal Procedure article 782A provide that in cases where punishment is necessarily at hard labor, the case shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Under both state and federal jurisprudence, a criminal conviction by a less than unanimous jury does not violate a defendant's right to trial by jury specified by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment. See Apodaca v. Oregon, 4 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); State v. Belgard, 410 So.2d 720, 726 (La. 1982) ; State v. Shanks, 97-1885 (La.App. 1 Cir. 6/29/98), 715 So.2d 157, 164-65. See also State v. Smith, 06-0820 (La.App. 1 Cir. 12/28/06), 952 So.2d 1, 15-16, writ denied, 07-0211 (La. 9/28/07), 964 So.2d 352 ; State v. Caples, 05-2517 (La.App. 1 Cir. 6/9/06), 938 So.2d 147, 156-57, writ denied, 06-2466 (La. 4/27/07), 955 So.2d 684.
Defendant also asserts in his brief that Louisiana's non-unanimous jury verdict scheme violates equal protection because racial discrimination was a substantial factor behind the enactment of the constitutional provision. According to defendant, Louisiana adopted its non-unanimity rule in its 1898 constitutional convention as part of an effort "to perpetuate the supremacy of the Anglo-Saxon race in Louisiana."
Our supreme court in State v. Bertrand, 08-2215, 08-2311 (La. 3/17/09), 6 So.3d 738, addressed this issue several years ago: "Finally, defendants argue that the use of non-unanimous verdicts have an insidious racial component, allow minority viewpoints to be ignored, and is likely to chill participation by the precise groups whose exclusion the Constitution has proscribed." Id. at 742. The Bertrand Court found that a non-unanimous twelve-person jury verdict is constitutional and that Article 782 does not violate the Fifth, Sixth, and Fourteenth Amendments.[5] Id. Regarding the equal protection argument that such verdicts have an insidious racial component, the Bertrand Court noted that the issue had already been decided as meritless by a *954 majority of the United States Supreme Court in Apodaca . Id. at 743.
Thus, while Apodaca was a plurality rather than a majority decision, the United States Supreme Court, as well as other courts, has cited or discussed the opinion various times since its issuance and, on each of these occasions, it is apparent that its holding as to non-unanimous jury verdicts represents well-settled law. Bertrand, 6 So.3d at 742-43. Thus, Louisiana Constitution article I, § 17 (A) (or LSA-C.Cr.P. art. 782A) is not unconstitutional and, therefore, not in violation of defendant's constitutional rights. See State y. Hammond, 12-1559 (La.App. 1 Cir. 3/25/13), 115 So.3d 513, 514-15, writ denied, 13-0887 (La. 11/8/13), 125 So.3d 442, cert. denied, 572 U.S. 1090, 134 S.Ct. 1939, 188 L.Ed.2d 965 (2014).
This pro se assignment of error is without merit.
SENTENCING ERROR
Whoever commits the crime of aggravated rape (redesignated as first degree rape) shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 14:42D(1). According to the sentencing transcript and the minutes, the trial court failed to provide that the sentence for aggravated rape be served at hard labor. Inasmuch as an illegal sentence is an error discoverable by a mere inspection of the proceedings without inspection of the evidence, LSA-C.Cr.P. art. 920(2) authorizes consideration of such an error on appeal. Further, LSA-C.Cr.P. art. 882A authorizes correction by the appellate court.[6]
We find that correction of this illegally lenient sentence does not involve the exercise of sentencing discretion and, as such, there is no reason why this court should not simply amend the sentence. See State v. Price, 05-2514 (La.App. 1 Cir. 12/28/06), 952 So.2d 112 (en banc), writ denied, 07-0130 (La. 2/22/08), 976 So.2d 1277. Accordingly, since a sentence at hard labor was the only sentence that could be imposed, we correct the sentence by providing that it be served at hard labor. See State v. McGee, 08-1076 (La.App. 1 Cir. 2/13/09), 2009 WL 390809 (unpublished). We remand to the trial court for correction of the minutes and, if necessary, correction of the commitment order.
CONCLUSION
For the foregoing reasons, we affirm defendant's convictions and sentence for molestation of a juvenile, amend defendant's life sentence for aggravated rape by providing that it be served at hard labor, and affirm as amended. We also remand for correction of the minutes and, if necessary, correction of the commitment order.
CONVICTION AND SENTENCE FOR MOLESTATION OF A JUVENILE AFFIRMED; LIFE SENTENCE FOR AGGRAVATED RAPE AMENDED BY PROVIDING IT BE SERVED AT HARD LABOR AND AFFIRMED, AS AMENDED. REMANDED FOR CORRECTION OF THE MINUTES AND, IF NECESSARY, CORRECTION OF THE COMMITMENT ORDER.
HIGGINBOTHAM, J. concurs.

The victim is referred to by her initials. See LSA-R.S. 46:1844W.

S.W. repeated the first grade school year.

It was an 11 to 1 verdict for both counts 1 and 3.

In Bertrand , the supreme court only considered Article 782, while defendant in the instant case attacks Article I, § 17(A) itself. We find this approach to be a distinction without a difference, because Article 782 closely tracks the language of Article I, § 17(A).

An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. LSA-C.Cr.P. art. 882A.