ROBERT A. CHAISSON, Judge.
| gin this appeal, defendant, Everett Williams, asserts that his criminal convictions should be reversed and a new trial granted based on improper prosecutorial comments that prejudiced the jury and contributed to the guilty verdicts. For the reasons that follow, we find no merit to defendant’s arguments. Accordingly, we affirm his convictions and sentences; however, we remand the matter for correction of an error patent as noted herein.

PROCEDURAL HISTORY

On July 22, 2013, defendant proceeded to trial on the following charges: armed robbery of Vincent Davis, in violation of La. R.S. 14:64 (count one); attempted armed robbery of Donika Jackson, in violation of La. R.S. 14:27 and 14:64 (count two); aggravated battery of Vincent Davis and/or Alicia Bailey, in violation of La. R.S. 14:34 (count three); and three counts of possession of a |sfirearm by a convicted felon, in violation of La. R.S. 14:95.1 (counts six, eight, and nine).[1] After considering the evidence presented, the twelve-person jury, on July 24, 2013, found defendant guilty as charged on all six counts.
On August 16, 2013, the trial court sentenced defendant to ninety-nine years imprisonment on count one, forty-five years imprisonment on count two, and ten years imprisonment each on counts three, six, eight, and nine. The trial court specified that all counts were to be served at hard labor and concurrently with one another. In addition, the trial court ordered the sentences on counts one, two, six, eight, and nine to be served without benefit of parole, probation, or suspension of sentence. Defendant now appeals.

FACTS

This case arises from a robbery and shooting that occurred on January 18, 2012, at a residence in Harvey on the west bank of Jefferson Parish. At the time of the incident, Vincent Davis lived at the house with his mother, Alicia Bailey, and his grandmother, Anna Davis. Donika Jackson, Mr. Davis’s girlfriend, was also present at the house at the time of the occurrence. Each of these four individuals testified at trial.
*81 During the evening hours of January 18, 2012, Mr. Davis and Ms. Jackson were watching television in his bedroom. At about 8 or 9 p.m., Mr. Davis received a phone call from “Mar,” subsequently identified as co-defendant Jamar Owens, who wanted to buy some movies from him. • At trial, Mr. Davis explained that he éarned money by selling black market DVDs and CDs, that he usually sold eight DVDs for twenty dollars, and that he had conducted business with Mar on one previous occasion.
14After the phone call from Mar, Mr. Davis left the residence to go buy some food; however, when he went outside, Mar was waiting for him. The two engaged in conversation, and Mar gave Mr. Davis twenty dollars for the DVDs. Although it appeared that Mar was alone, Mr. Davis noticed that there was a car parked down the street. Mr. Davis recognized the car because he had observed Mar in the car previously, along with the other men involved in the incident.
While still outside of the residence, Mar produced a gun, placed it in Mr. Davis’s face, and apparently took back the money he had given Mr. Davis for the movies. Mar struck Mr. Davis in the head with a gun, and thereafter, a second perpetrator hit Mr. Davis. These two individuals, along with a third attacker, then forced Mr. Davis inside his house and made him lie on the floor in front of the doorway by the den area.' The perpetrators demanded money, and according to Mr. Davis, they took “some money” from him, although he did not know how much.
At some point during this encounter, a dark-skinned black man, subsequently identified as defendant, entered Mr. Davis’s bedroom, placed a “big gun” to Ms. Jackson’s head, told her to get up, and demanded more money. Mar also came into the bedroom and placed a gun to Ms. Jackson’s head. After the two repeatedly questioned Ms. Jackson about the money, Mar returned to the den area where Mr. Davis was still lying on the floor. Mar and the third perpetrator kept hitting Mr. Davis in the head while defendant searched the bedroom.
Ms. Bailey and Ms. Davis, who were in their bedrooms, heard a noise and went to the back of the house to investigate. Upon seeing the two women, Mar and the other perpetrator in the room with Mr. Davis ran out the door. Defendant then emerged from Mr. Davis’s bedroom with a gun and fired two shots as he ran from the house. The gunfire hit and injured Ms. Bailey and Mr. Davis. After defendant fled, Ms. Jackson called 9-1-1.
1 r,Sergeant Charles Lee of the Jefferson Parish Sheriffs Office responded to the call, and upon his arrival, he secured the scene, conducted preliminary interviews with the victims, and assisted in the collection of evidence, which included the recovery of two spent casings, projectile fragments, and a Samsung burgundy cell phone battery cover. Following this initial involvement, Sergeant Lee turned the investigation over to Detective Bruce Ver-rette of the Jefferson Parish Sheriffs Office.
During the course of his investigation, Detective Verrette was provided with three nicknames of possible suspects, including “Mar” and “Tater.”[2] In addition, Detective Verrette obtained statements from the victims who had arrived home from the hospital. Based on the information gathered, Detective Verrette devel *82 oped defendant, Jamar Owens, and Isaac Williams as suspects and thereafter presented photographic lineups of these suspects to the victims. Ms. Jackson positively identified defendant as the individual who held a gun to her head and who shot Ms. Bailey and Mr. Davis. Ms. Jackson also positively identified co-defendant Owens as the person who held a gun to her head and who hit Mr. Davis in the head with a gun. Likewise, Mr. Davis positively identified defendant as the person who shot him and his mother, Alicia Bailey. Further, he positively identified Owens as the individual who called him in reference to the DVDs.[3]
After these positive identifications of defendant and co-defendant Owens, Deputy Verrette obtained warrants for their arrests. They were both arrested on February 7, 2012. Following defendant’s arrest, police officers executed a search warrant at his Marrero residence. As a result of the search, the officers recovered a | sGlock .40 caliber semi-automatic pistol and a Springfield Armory .45 caliber semi-automatic pistol.
Elaine Schneida, an expert in the field of forensic DNA analysis, testified that she received swabs from the two semi-automatic pistols recovered from defendant’s residence and a swab from defendant and Mr. Owens. Based on her testing, Ms. Schneida was unable to exclude defendant as a possible contributor to the DNA found on both pistols. She explained that 99.9 percent of the Caucasian, African-American and Hispanic population could be excluded; however, defendant could not be excluded.[4]

DENIAL OF MOTION FOR MISTRIAL

In his sole assigned error, defendant contends that the trial court improperly denied his motion for mistrial, which was based on the prosecutor’s argument to the jury that the defendants had the responsibility to call a witness. Specifically, defendant complains about the prosecutor’s comment during rebuttal argument that defendants had Vincent Bailey under subpoena. Mr. Bailey, the father of Vincent Davis, provided the police with the nicknames of the subjects, although he did not live at the residence and,was not present at the time of the incident.
After closing arguments by defense counsel, the State, in its rebuttal argument, stated as follows:
I don’t know if Ms. Sheppard and Mr. Louque [defense counsel] want me to bring in everybody in the neighborhood, .... I don’t know if they want me to bring everybody in, but it is not our obligation. We were not asked to do that. We are asked to prove the elements of each of the crimes beyond a reasonable doubt. We have done that over the course of the last two days.
Mr. Louque and Ms. Sheppard had Mr. Bailey under subpoena. They could have—
*83 17Pefense counsel objected and requested a mistrial on the grounds that the prosecutor’s argument violated defendant’s rights to not testify and to not present a defense. In response, the prosecutor explained that he was only responding to defendant’s arguments that Mr. Bailey was under the State’s control and that the State could have presented him as a witness. The trial court denied defense counsel’s request for a mistrial and admonished the jury as follows:
Ladies and gentlemen, as we have told you during voir dire, as the attorneys have stressed, the defendants do not have the burden of proof. They don’t have to call any witnesses. They don’t have to produce any evidence. The burden is always upon the State of Louisiana to prove the elements of this crime, to prove each and every element of the crime beyond a reasonable doubt. It is not up to the defense. It is totally up to the State.
The last comment made about the defense calling witnesses, they don’t have to call anyone. They don’t have to subpoena anyone. Any mention about subpoenas of witnesses that the defense may or may not have used or called, that’s not evidence; and when you go in the back to deliberate, you are only to base your deliberations on what you saw and heard from the witness stand, okay.
Defendant now seeks review of the trial court’s denial of his motion for a mistrial.[5] Defendant argues that a mistrial was warranted because the State’s reference about having Vincent Bailey under subpoena shifted the burden of proof to defendant and highlighted his failure to take the stand. Further, defendant asserts that the admonishment given by the trial court was insufficient to minimize the prejudice caused by the prosecutor’s comment. We find no merit to defendant’s arguments.
A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to the defendant that deprives him of a reasonable expectation of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be Isdisturbed absent an abuse of that discretion. State v. Davis, 12-512 (La.App. 5 Cir. 4/24/13), 115 So.3d 68, 79, writ denied, 13-1205 (La.11/22/13), 126 So.3d 479.
The prosecutor has considerable latitude in making closing arguments; however, this latitude is not without limits. State v. Greenup, 12-881 (La.App. 5 Cir. 8/27/13), 123 So.3d 768, 776, unit denied, 13-2300 (La.3/21/14), 135 So.3d 617; State v. Uloho, 04-55 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 927, writs denied, 04-1640 (La.11/19/04), 888 So.2d 192 and 08-2370 (La.1/30/09), 999 So.2d 753.
La.C.Cr.P. art. 774 defines the scope of argument and rebuttal:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state’s rebuttal shall be confined to answering the argument of the defendant.
*84 The trial judge has broad discretion in controlling the scope of closing arguments. A conviction will not be reversed due to improper remarks during closing arguments unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Greenup, 123 So.3d at 775-76.
In State v. Uloho, supra, the defendant raised the same argument asserted herein. In that case, during closing arguments, defense counsel argued that the State failed to call certain witnesses. During rebuttal argument, the prosecutor commented that defense counsel had the same subpoena power as the State. The trial court overruled the defendant’s objection. On appeal, the defendant contended that “the trial court erred in allowing the State to refer to defendant’s 19subpoena power in rebuttal because the remarks misled the jury into believing that defendant had the burden of proving her innocence.”
Considering the prosecutor’s remarks in context, this Court determined that the prosecutor’s comments in rebuttal regarding the defendant’s subpoena power were in response to the defendant’s remarks. In addition, this Court noted that the trial judge instructed the jury that the opening statements and closing arguments of the attorneys were not to be considered evidence and that the defendant was not required to call any witnesses or produce any evidence. Therefore, the trial court did not err in overruling the defendant’s objections. State v. Uloho, 875 So.2d at 928.
Likewise, in the present case, the prosecutor’s rebuttal’was in response to defense counsel’s argument. During closing arguments, defense counsel argued that the State failed to present the testimony of Mr. Bailey, who provided the police officers with the nicknames of the offenders. Defense counsel invited the jury to disbelieve the State witnesses and argued that Mr. Bailey instructed the State’s witnesses to identify defendant as the offender of these crimes. Defense counsel further stated Mr. Bailey would be easy to find and present in court because he was the father of the victim, Mr. Davis. In addition, defense counsel argued that the State failed to prove these charges beyond a reasonable doubt because they failed to present the testimony of Mr. Bailey.
In rebuttal, the State argued that it was not obligated to present every witness desired by the defense. The State explained that it was required to prove the elements of the crime beyond a reasonable doubt and argued that it had accomplished that over the course of the trial. The State asserted that the defense had Mr. Bailey under subpoena. Considering the prosecutor’s remarks in context, we find that the prosecutor’s comments in rebuttal were in response to defense ¡^counsel’s remarks during closing argument, and therefore, a mistrial was not warranted.
In this assigned error, defendant further argues that a mistrial was warranted because the prosecutor’s remark was an oblique reference to defendant’s failure to testify. In State v. Bolden, 05-0749 (La.App. 3 Cir. 4/17/96), 680 So.2d 6, 35, writ denied, 96-1272 (La.11/22/96), 683 So.2d 286, a similar argument was considered and rejected by the appellate court. In that case, the court held that rebuttal argument by the prosecution which referenced the defendant’s subpoena power did not constitute any reference to the defendant’s failure to testify or to present a defense. The appellate court further noted that the State’s remark merely answered the defendant’s closing arguments.
Likewise, in State v. Banks, 627 So.2d 756, 758 (La.App. 2 Cir.1993), the court *85 concluded that the defendant was not entitled to a mistrial based on the State’s comment, during rebuttal argument, on the defense’s failure to call a certain witness to testify. The court found that the prosecutor’s remark constituted neither a direct nor an indirect reference to the defendant’s failure to testify, but rather addressed the defendant’s theory of defense.
Agreeing with the rationale in these cases, we find that the State’s comment during rebuttal about defendant’s subpoena power did not constitute either a direct or an indirect reference to defendant’s failure to testify, and therefore, a mistrial was not warranted under the mandatory mistrial provisions of La.C.Cr.P. art. 770 or the discretionary mistrial provisions of La.C.Cr.P. art. 771.
We further note the trial court admonished the jury that the prosecutor’s comments regarding the subpoena power of the defense was not evidence and that defendant was not required to call any witnesses or produce any evidence. The judge further admonished the jury that the State had the burden of proof and not |nthe defense. In addition, during the final jury charges, the trial judge instructed the jury that the defendants are not required to prove their innocence, that the defendants are not required by law to call any witnesses or produce any evidence, and that the burden is always on the State to prove defendants’ guilt beyond a reasonable doubt. The trial court further instructed the jury that closing arguments are not to be considered as evidence.
In light of the jurisprudence discussed herein and considering the prosecutor’s remarks in context, we find that the trial court did not abuse its discretion in denying defendant’s motion for mistrial. Accordingly, the arguments raised by defendant in this assigned error are without merit.

ERROR PATENT REVIEW

We have also reviewed the record for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 837 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals an error in the “State of Louisiana Uniform Commitment Order,” insofar as the dates of the offenses. While the uniform commitment order correctly reflects the offense date of February 7, 2012, for the charges of possession of a firearm by a convicted felon, it fails to reflect the offense date of January 18, 2012, for the armed robbery, attempted armed robbery, and aggravated battery charges.
This Court has previously remanded a case for correction of the uniform commitment order in its error patent review. State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36. Therefore, we direct the trial court to make the appropriate entry reflecting this additional offense date and direct the Clerk of Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which defendant has been sentenced and the Department of Correction’s Legal Department. See La.C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-244 (La.9/15/06), 937 So.2d 846; State v. Lyons, 134 So.3d at 41.
For the reasons set forth herein, we affirm defendant’s convictions and sentences. The matter is remanded for correction of an error patent as noted herein.

CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS.

. Co-defendant Jamar Owens proceeded to trial with defendant and was convicted of five criminal charges. His appeal is currently pending before this Court.

. Vincent Bailey, the father of Vincent Davis, provided the police with the nicknames of the suspects.

. Although Mr. Davis did not initially provide police with the names of the perpetrators, he testified at trial that he recognized all three of them and knew them by their nicknames. He admitted that at first, he did not cooperate with police and told them that he only saw the face of one perpetrator, Mar. His family subsequently convinced him to cooperate with police, at which time he gave a statement and made positive identifications of defendant and Owens in photographic lineups.

. At trial, in reference to the possession of firearms charges, the State introduced defendant’s certified conviction records and stipulated that his records showed that he was convicted in Jefferson Parish on May 5, 2010, for attempted armed robbery and aggravated battery, and on November 15, 2007, for possession of cocaine.

. Defendant also filed a motion for new trial in which he asserted, in part, as follows: "The state erred in suggesting in- its closing argument that the defense had any responsibility to call any witnesses at this trial.” The trial court denied defendant's motion for new trial.