HIGGINBOTHAM, J.
|2The defendant, Rory Dean Vansant, was charged by grand jury indictment with aggravated incest, a violation of La. R.S. 14:78.1.[1] He pled not guilty and, following a jury trial, was found guilty as charged. The defendant was sentenced to thirty-five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now appeals, designating one assignment of error.

FACTS

Ten-year-old D.D.[2] and her sister, C.D., who was about three years older, lived in Slidell with their paternal grandparents. When D.D.’s mother, Kathrine, married the defendant, she gave domiciliary custody of D.D. and C.D. to the parents of her ex-husband, the biological father of the girls. Thus, the defendant was D.D.’s (and C.D.’s) stepfather. In November of 2006, because of Kathrine’s and the defendant’s financial problems, the children’s grandparents let Kathrine and the defendant *1061 rent the trailer behind their home. Under the custodial agreement, the girls would sleep at the trailer every other weekend to visit their mother. According to D.D., after Kathrine and the defendant moved into the trailer, when she slept over at the trailer, the defendant sexually abused her. D.D. and C.D. slept on the couches in the living room in the trailer. On weekend nights, when Kathrine was either asleep or away at work, the defendant would kneel down next to D.D. on the couch while she was sleeping. He would place his hand under her shorts and rub, and insert a finger into her vagina. This would cause D.D. to awaken but, out of fear, she remained silent. The defendant did this to D.D. on several occasions. Eventually, D.D. told her | ¡¡grandfather. D.D. spoke to the police, and was subsequently taken to the Child’s Advocacy Center (CAC) in Covington, where she was interviewed about what the defendant had done to her. The CAC interview was played for the jury. D.D. testified in court about the defendant’s sexual abuse. The defendant testified that he never touched D.D. inappropriately.

ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant argues that the trial court erred in overruling the defendant’s objection to the State’s alleged improper argument, and it abused its discretion in denying the motion for mistrial. Specifically, the defendant contends his motion for mistrial should have been granted because, during closing argument, the State referred to the defendant’s ability to call any witness he wanted, as well as his failure to call a particular witness.
In this case, D.D. made the initial complaint of her sexual abuse to her grandfather, Clarence. The State did not call Clarence as a witness. In his closing argument, defense counsel David Anderson[3] discussed at length the State’s decision not to call Clarence to the stand, even though he was present during the trial. The relevant portion of Anderson’s closing argument is as follows:
I’m not saying whether you should expect more evidence. I’m saying that you will be asked whether you believe this case beyond a reasonable doubt. So you have to say it would be unreasonable, any doubts I have would be — they wouldn’t make sense. And that’s — there is some pretty big doubts there.
The State has done a pretty good job, though, of pushing forward the links in the chain that serve the story and then pulling back the links in the chain that don’t serve the story.
For example, Frankie ... got on the stand and she could have — she testified about the effects of [D.D.’s] disclosure, but she couldn’t say anything about [D.D.’s] disclosure. The reason for this is that she was not the first person who heard it. The first person who hears a complaint of sexual abuse can talk about it in court. That’s what Mrs. Rickels and Dr. Atzemis were talking about, the first reporter, the person who hears the accusation when it’s the freshest.
And so there’s a special exception for the person who comes in to testify about that. And that was [Clarence], you heard that. And | ¿believe me, he might be in the courtroom and he was definitely available to come in and testify. But for some reason the State pulled that one back, the most valuable piece of evidence according to the State’s expert. And the burden is on them. Their job is to come in and build the case.
*1062 So they don’t have the first reporter. They tell you don’t worry about it, we have the videotape and another audiotape and the doctor remembers it and [D.D.] will come in and testify. Well, it’s not uncommon that these cases are just one witness on one more witness.
[[Image here]]
So the first reporter is not here— wasn’t here to testify. And the eyewitness, according to [D.D.] in the videotape, apparently the most accurate record we have, also missing. And so the State says to you don’t worry, it’s normal. In the normal case, it’s one girl accusing one person and he probably did it because he’s a terrible guy, look at the mug shot, terrible guy, look at the messy trailer.
In his rebuttal argument, the prosecutor Bruce Dearing addressed Anderson’s argument about the State not calling D.D.’s grandfather to testify:
[Clarence] is in the courtroom. And this is another one of those situations where the State is in a no-win situation. If [Clarence] had been called to the stand by the State and said, “[D.D.] came to me and said that her stepdad was touching her improperly,” do you think Mr. Anderson would have stood up here and said, “All right. We concede, you know, [Clarence] confirmed that [D.D.] said it, so it must be true, you should find him guilty”?
Do you really think that’s what Mr. Anderson would have stood up here and said?
No, he would have said, you know, after me dragging in a grandfather to the stand having him talk about something so emotional, the defense would be arguing: Why did the State bring in the grandfather? He didn’t see any of this. He can’t help us decide this case. They brought the grandfather in because they want to appeal to your emotions, to your sympathy, see that grown man cry about having to listen to his granddaughter tell him that news.
So again: Damned if we do and damned if we don’t. And if the defense felt like [Clarence] would have said something that contradicted anything that [D.D.] said, they have the power to subpoena just like the State.
At this point, the following exchange took place:
Mr. Carriere [another defense counsel]: Objection, Your Honor. We do not have the burden.
Mr. Dearing: Thank you.
The Court: Overruled. Come on up. [proceedings were held at the bench] You don’t through objections try to argue to the jury. Mr. Carriere, you know good and well that you have the right to subpoena witnesses just as well as the State.
IsDearing resumed his rebuttal argument:
Both sides have the power of subpoena. The defense could have brought in [Clarence], just as easy as the State, if they thought he would have said something that undermined something that [D.D.] had said.
I have the burden of proof, but the law says that I could have put on [D.D.], and if you believed her, just based on that and I decided to rest my casé after [D.D.], I didn’t have to put anything else on. So a lot of the times the witnesses that I put on are in anticipation of the argument the defense is going to make as to why I didn’t do this, why didn’t I do that.
The trial court then instructed the jury on the law, and the jury went into deliberation. At this point, to preserve the rec *1063 ord, defense counsel moved for a mistrial. Following is that relevant exchange:
The Court: Be seated. Any objections to the manner in which the instructions were read?
Mr. Dearing: No, Your Honor, not by the State.
Mr. Carriere: Not to the manner of reading the jury instructions.
First, I want to apologize. You were right for me not to state my objections out loud, I needed to approach the bench. I apologize for that. But just to protect the record regarding you overruling my objection, I do want to move for a mistrial based on counsel’s comment of stating that we may call — the defense may call witnesses. I think it’s improperly shifting the burden and it’s impermissible. So I’m going to protect the record, I’m moving for a mistrial under Article 775, Code of Criminal Procedure, (A)(3), where, “There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law.”
The Court: And there are several cases concerning that that says that the State can point that out. So I’m overruling your motion for a mistrial, sir.
The defendant asserts in brief the trial court erred in overruling the objection to the State’s improper argument and should have granted a mistrial. According to the defendant, the trial court’s failure to sustain the objection left the jury with the impression that he (the defendant) failed to present evidence that he was responsible for presenting and, as such, caused undue prejudice.
A mistrial may be ordered, and in a jury case the jury dismissed, when there is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law. La. Code Crim. P. art. 775(3). A mistrial is a drastic remedy which should only be declared upon a clear showing of prejudice by | fithe defendant. In addition, a trial judge has broad discretion in determining whether conduct is so prejudicial as to deprive an accused of a fair trial. State v. Smith, 418 So.2d 515, 522 (La.1982). See State v. Berry, 95-1610 (La.App. 1st Cir.11/8/96), 684 So.2d 439, 449, writ denied, 97-0278 (La.10/10/97), 703 So.2d 603. A reviewing court in Louisiana should not reverse a defendant’s conviction and sentence unless the error has affected the substantial rights of the accused. See La. Code Crim. P. art. 921.
Closing arguments in criminal cases should be restricted to the evidence admitted, to the lack of evidence, to conclusions of fact that may be drawn therefrom, and to the law applicable to the case. Further, the State’s rebuttal shall be confined to answering the argument of the defendant. See La.Code Crim. P. art. 774. Prosecutors are allowed wide latitude in choosing closing argument tactics. See State v. Draughn, 2005-1825 (La.1/17/07), 950 So.2d 583, 614, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). The trial judge has broad discretion in controlling the scope of closing arguments, and this court will not reverse a conviction on the basis of improper closing argument unless thoroughly convinced that the remarks influenced the jury and contributed to the verdict. See State v. Prestridge, 399 So.2d 564, 580 (La.1981); Draughn, 950 So.2d at 614.
The trial court was correct in its assertions that the defendant had the right to subpoena just as well as the State, and that once the issue is raised, the State can point that out. In State v. Williams, 2014-40 (La.App. 5th Cir.9/24/14), 151 So.3d 79, 82-85, defense counsel in closing argument argued the State could have *1064 called a certain witness that it did not. In rebuttal argument, the prosecutor stated that the defendant had that particular witness under subpoena and could have called him to testify. The defendant moved for a mistrial, arguing the State shifted the burden of proof to the defendant. The motion for mistrial was denied. In finding no abuse of discretion in denying the motion for mistrial, the Fifth Circuit noted that the 17prosecutor’s rebuttal was in response to defense 'Counsel’s argument. During closing arguments, defense counsel argued that the State failed to present the testimony of Mr. Bailey, who provided the police officers with the nicknames of the offenders. In rebuttal, the State argued that it was not obligated to present every witness desired by the defense, and further asserted that the defense had Mr. Bailey under subpoena. The Williams Court found that, considering the prosecutor’s remarks in context, the comments in rebuttal were in response to defense counsel’s remarks during closing argument, and, as such, a mistrial was not warranted.
In State v. Uloho, 2004-55 (La.App. 5th Cir.5/26/04), 875 So.2d 918, 927-28, writs denied, 2004-1640 (La.11/19/04), 888 So.2d 192, 2008-2370 (La.1/30/09), 999 So.2d 753, when defense counsel in closing argument found it “astonishing” that no police officer who was on the scene was called to testify to corroborate a deputy’s testimony, the prosecutor in rebuttal stated that the defendant had the same subpoena power as the State had. In affirming the trial court’s overruling of the defendant’s objections, the Fifth Circuit found that the defense invited the jury in closing arguments to disbelieve the witnesses it called to testify because the State did not call other witnesses to corroborate their testimony, and the prosecutor’s comments about the defendant’s subpoena power in rebuttal were in response to those remarks.
Similarly in the instant matter, defense counsel in closing argument contended that the State could have called Clarence to testify and that failing to call the witness of the initial complaint of abuse suggested a lack of corroboration of D.D.’s testimony. In rebuttal, the prosecutor pointed out that the defense could just as easily have called Clarence to testify had it chosen to do so. We find nothing improper in these comments by the prosecutor that were little more than a direct response to defense counsel’s questioning in closing argument why the State did not have Clarence testify. See Williams, 151 So.3d at 85. See also State v. Kyles, 513 So.2d 265, 272-73 (La.1987), cert. denied, 486 U.S. 1027, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988); States v. Owens, 2014-41 (La.App. 5th Cir.9/24/14), 151 So.3d 86, 89-92; State v. Daniels, 32,017 (La.App. 2nd Cir.5/5/99), 740 So.2d 691, 697, writ denied, 99-1599 (La.11/12/99), 749 So.2d 651. Moreover, even if improper, the prosecutor’s remarks in rebuttal clearly did not contribute to the verdict nor make it impossible for the defendant to obtain a fair trial. See La.Code Crim. P. art. 775; Ulo-ho, 875 So.2d at 928.
The defendant suggests in brief that the trial court, in not granting the mistrial, should at least have admonished the jury to disregard any inference by the State that the defense had an obligation to call witnesses. An admonishment must be requested by one of the parties, and defense counsel made no such request for an admonishment. See La.Code Crim. P. art. 771(1); State v. Jack, 554 So.2d 1292, 1296 (La.App. 1st Cir.1989), writ denied, 560 So.2d 20 (La.1990).
The trial court in the instant matter instructed the jury following closing arguments that the defendant was presumed innocent and he was not required to prove his innocence. The trial court further in *1065 structed that opening statements and closing arguments were not evidence. Much credit should be accorded to the good sense and fairmindedness of jurors who have seen the evidence and heard the argument, and have been instructed by the trial judge that arguments of counsel are not evidence. See State v. Mitchell, 94-2078 (La.5/21/96), 674 So.2d 250, 258, cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996). See Uloho, 875 So.2d at 928.
Based on the foregoing, the trial court did not err in overruling the defendant’s objection during closing arguments. Further, we find no abuse of discretion in the trial court’s denial of the defendant’s motion for a mistrial.
The assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.

. The defendant was charged with a second count of aggravated incest of another victim (C.D.). The State severed this second count and proceeded to trial on the first count only. Louisiana Revised Statutes 14:78.1 has been repealed with aggravated incest now being referred to as aggravated crime against nature. See La. R.S. 14:89.1(A)(2) as amended by 2014 La. Acts No. 177, § 1.

. The victim and her sister are referred to by their initials. See La. R.S. 46:1844(W).

. Three attorneys represented the defendant at trial.