NOT DESIGNATED FOR PUBLICATION

# STATE OF LOUISIANA
# COURT OF APPEAL
# FIRST CIRCUIT

## DOCKET NUMBER
## 2022 KA 0789

## STATE OF LOUISIANA

## VERSUS

## DON PATRICK BARRINGTON, JR.

Judgment Rendered: **MAR 1 6 2023**

\* \* \* \* \*

## ON APPEAL FROM THE
## 22ND JUDICIAL DISTRICT COURT, DIVISION E
## ST. TAMMANY PARISH, LOUISIANA
## DOCKET NUMBER 602735

## HONORABLE WILLIAM H. BURRIS, JUDGE PRESIDING

\* \* \* \* \*

Warren L. Montgomery
District Attorney
and
J. Bryant Clark, Jr.
Assistant District Attorney
Covington, Louisiana

Attorneys for Plaintiff-Appellee
State of Louisiana

Sherry Watters
New Orleans, Louisiana

Attorney for Defendant-Appellant
Don Patrick Barrington, Jr.

\* \* \* \* \*

BEFORE:  McCLENDON, HOLDRIDGE, and GREENE, JJ.

Holdridge J. concurs w/ Reasons

**GREENE, J.**

The State charged Don Patrick Barrington, Jr., the defendant, with two counts of armed robbery, violations of La. R.S. 14:64. He pled not guilty, and, following a trial, the jury found him guilty as charged on both counts. The defendant filed a motion for post-verdict judgment of acquittal and a motion for new trial, both of which the trial court denied. On each count, the trial court sentenced the defendant to 50 years imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence, to be served concurrently. The defendant now appeals, assigning error to the introduction of identification testimony, demonstrative evidence, and other crimes evidence; to the sufficiency of the evidence; and to the constitutionality of the sentences. For the following reasons, we affirm the convictions and sentences.

## FACTS

On December 25, 2017, Elizabeth Powell was working a double shift as a cashier/clerk at the Exxon/Circle K gas station located at 888 Gause Boulevard in Slidell, Louisiana. At some point before midnight, a regular customer came into the store and used a twenty-dollar bill to pay for his items. As employees were not allowed to keep more than $35 in the cash register overnight, Ms. Powell walked over to the safe to deposit $40. As she was getting to the safe, a young man came around the corner with a knife in his hand. This made her feel unsafe. Referencing the envelope in her hand, the perpetrator said, "I will take that." The perpetrator then told her he would take what was in the drawer as well. Ms. Powell walked backwards to the cash register, pressed the open drawer button, and removed the drawer. The perpetrator then removed cash from the drawer, dropped his knife, bent over to pick it up, and then left the store. Ms. Powell then hit the light switch that magnetically locked the doors and called 911. She told the 911 operator that she was just robbed at knifepoint. She described the perpetrator as a white, young male with a beard and red hair, wearing a black-knit hat and dark clothes. The St. Tammany Parish Sheriff's Office (STPSO) received Ms. Powell's call at 11:48 p.m.

Almost 40 minutes later, at 12:26 a.m., on December 26, 2017, the STPSO received a 911 call from the Shell/Purple Cow gas station (Purple Cow) located at 183

2

Northshore Boulevard in Slidell. The 911 caller was Rhiannon Breaux, the clerk working at the Purple Cow at the time. She stated that she ran away from a white male who was breaking into her cash register. She described the perpetrator as 5'9" to 5'10" with reddish-blonde hair and a beard, wearing a beanie, a gray sweater, and black pants. She stated that the person did not try to harm her but reiterated that he was trying to take money from the cash register. When asked if the person had a weapon, she stated he had a screwdriver and tried to use it to open the cash register and it broke. She also stated, "he took all of my money" and ran out of the store.

At trial, Ms. Breaux testified that she initially thought the perpetrator was joking but realized he was serious when he came behind the counter. The perpetrator moved her out of the way, shoved her into the cigarette display, and then tried to gain access into the cash register. Ms. Breaux further testified that the perpetrator had an object in his hand. She stated that she "had initially thought that it was a screwdriver,"[1] noting he used the object to try to break into the cash register but was unsuccessful. Ms. Breaux walked out of the store and called 911 as the perpetrator scanned an item, ultimately causing the cash register to open. Ms. Breaux remained on the phone with the 911 operator as the perpetrator was leaving. The defendant was positively identified as the perpetrator of both robberies.

## SUFFICIENCY OF THE EVIDENCE

In assignment of error number four, the defendant challenges the sufficiency of the evidence. He argues the State failed to prove the elements of the offenses or his identity as the perpetrator beyond a reasonable doubt. He specifically contends that as to count two, the robbery at the Purple Cow, the State failed to prove a taking of anything of value and that count two was, at best, an attempted robbery. He argues that as to both counts, the State failed to prove the use of force or intimidation. The defendant notes that the store clerks did not identify the perpetrator prior to the trial. The defendant further notes that he was a customer in Ms. Breaux's store and that his fingerprints could have at any time been left on the bottle scanned by store clerks for

---

[1] We note that the object in the perpetrator's possession was a knife, as can be clearly viewed in the Purple Cow surveillance footage. On appeal, the defendant does not challenge the nature of the object or its classification as a dangerous weapon.

3

access to the cash register. He notes that only one print from the bottle was identified as his while other prints lifted from the bottle were not identified.

When issues are raised on appeal contesting the sufficiency of the evidence and alleging one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. When the entirety of the evidence, including any inadmissible evidence that was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot. On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992); *State v. Duhon*, 18-0593 (La. App. 1 Cir. 12/28/18), 270 So.3d 597, 609, *writ denied*, 19-0124 (La. 5/28/19), 273 So.3d 315.

A conviction based on insufficient evidence cannot stand as it violates Due Process. *See* U.S. Const. amend. XIV; La. Const. art. I, §2. The standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of the crime beyond a reasonable doubt. *See* La. C.Cr.P. art. 821(B); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Ordodi*, 06-0207 (La. 11/29/06), 946 So.2d 654, 660. The *Jackson* standard of review, incorporated in La. C.Cr.P. art. 821(B), is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. *State v. Patorno*, 01-2585 (La. App. 1 Cir. 6/21/02), 822 So.2d 141, 144. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. *State v. Dyson*, 16-1571 (La.

4

App. 1 Cir. 6/2/17), 222 So.3d 220, 228, *writ denied*, 17-1399 (La. 6/15/18), 257 So.3d 685.

Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64(A). The State bears the burden of proving the elements of the offense, as well as the identity of the defendant as the perpetrator. When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. A positive identification by only one witness is sufficient to support a conviction. *State v. Weary*, 03-3067 (La. 4/24/06), 931 So.2d 297, 311, *cert. denied*, 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006).

Lieutenant Richard Walden with the Slidell Police Department (SPD) patrolled the general area of Slidell in which both robberies took place for over 13 years. Lieutenant Walden was the lead investigator for the instant robberies. Lieutenant Walden testified regarding a map introduced by the State, highlighting a route between the two stores. He testified that it takes about 10 minutes to get anywhere in Slidell in ideal traffic, and it could take anywhere from 30 minutes to an hour in busier traffic. He further testified that the Long Stay Motel, where the defendant was staying when he was identified as the perpetrator of the instant offenses, is located at 2101 Second Street, within the area shown on the map. Lieutenant Walden noted that evidence was collected and interviews were conducted at both convenience stores. Further, surveillance footage of the incidents, collected from each store, shows that the perpetrator of each robbery was wearing the same clothes.

Lieutenant Walden confirmed that he was able to determine the approximate height of the perpetrator from markers on the doorframe of the south door of the Circle K, facing Gause Boulevard. He noted that the perpetrator's head was very close to the top of the door frame as he exited the store. Lieutenant Walden confirmed that the perpetrator's height in the video is consistent with the defendant's height. He further testified that he slowed the video down and was able to obtain a screenshot showing

5

that the perpetrator was a white male with thin facial hair and a distinguishing facial feature consisting of "a very significant bend in his nose that pointed to the side of his face." When asked if any DNA or fingerprints were recovered from the Circle K, the scene of the first robbery, Lieutenant Walden noted that the perpetrator wore gloves during that robbery.

Lieutenant Walden further noted that the surveillance footage of the robbery at the Purple Cow captured the perpetrator as he removed his gloves and tried to pry open the cash register. The perpetrator then grabbed a Fireball bottle and a Coke bottle and rang those items up to manipulate the cash register into opening, as it does when money will be tendered to pay for scanned items. Thus, items were collected to test for DNA or fingerprint evidence and areas were swabbed for DNA. The swabs were sent to a crime lab for testing and entered into a computer system called CODIS. The surveillance footage also shows the perpetrator with a black shirt bearing a visible logo slung over his shoulders.

Lieutenant Walden ultimately released a "be-on-the-lookout" (BOLO) alert to all surrounding agencies and placed the surveillance footage on Facebook, hoping that someone would see the video and recognize the perpetrator. He investigated numerous tips received through Crimestoppers and one led to the identification of defendant as the perpetrator. Also, during the course of an investigation in an unrelated case, an individual named Lee Robbins came forward and identified the defendant as the perpetrator in the instant case.

After investigating Mr. Robbins' tip, Lieutenant Walden believed he had a positive identification. He obtained information pertaining to the defendant, including his status as a Slidell resident and his open Facebook account with accessible pictures for comparison with the surveillance footage.[2] Lieutenant Walden noted that the defendant's "facial features matched the perpetrator [sic] features to a T." He added, "the jaw line, the nose, and even the ears were consistent ... along with the height and weight." He noted that the defendant's facial hair and hair color were also consistent

---

[2] We also note that STPSO Deputy Dylan Crawford testified that the defendant had experience as a clerk at a gas station prior to the instant offenses and would have been familiar with operating a cash register. Specifically, Deputy Crawford testified that, in 2012, as a part of an investigation that required him to make contact with gas station clerks, he went to a Kangaroo Express gas station, where he saw the defendant, who was then a clerk at the store.

6

with the perpetrator's features as shown on the surveillance footage. Finally, the fingerprint collected from the Coke bottle at the scene of the Purple Cow robbery matched the defendant's fingerprint taken from his right middle finger.[3]

The SPD executed a warrant for the defendant's arrest and a warrant to search his room at the Long Stay Motel. During the execution of the search warrant for the defendant's motel room, the police recovered a black long-sleeved shirt with a Saints logo on it in big block letters, three beanie style caps (dark blue and black), and a knife.[4]

In addition to providing his pretrial identification of the defendant, Mr. Robbins also testified at trial. During his testimony, Mr. Robbins confirmed his lengthy criminal history, which ended in 2018 when he stopped using opiates. He further confirmed that he received the benefit of a plea bargain in exchange for truthful testimony in the instant case. Mr. Robbins met the defendant in approximately 2014, when they worked together at a restaurant in Slidell, and had contact with him through 2018. In addition to knowing the defendant, Mr. Robbins also knew the defendant's girlfriend, Jacqueline Flint. He testified that one day, after he and Jacqueline had used drugs together, she showed him the Facebook video posted by the SPD showing surveillance footage of the robberies. Mr. Robbins testified that he recognized the defendant in the footage, noting that he was not wearing a mask, and that it was "obvious," as he had known the defendant for years. Mr. Robbins further identified the defendant in court as the person shown in the videos committing the offenses.

In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Dorsey*, 10-0216 (La. 9/7/11), 74 So.3d 603, 634, *cert. denied*, 566 U.S. 930, 132 S.Ct. 1859, 182 L.Ed.2d 658 (2012). Further, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of

---

[3] On the surveillance footage, the perpetrator can be seen using his right hand to grab the Coke bottle. Sergeant Steven Gilley with the SPD, accepted at trial as an expert in fingerprint collection and analysis, collected the evidence at both scenes and analyzed the fingerprint evidence in this case. He testified that one of the four fingerprints he lifted from the Coke bottle was suitable for comparison; he found that print to match the defendant's fingerprint.

[4] The State conceded that the seized knife was not similar in appearance to or believed to be the knife used in the instant offenses.

7

the weight of the evidence, not its sufficiency. Accordingly, on appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. *State v. Lavy*, 13-1025 (La. App. 1 Cir. 3/11/14), 142 So.3d 1000, 1006, *writ denied*, 14-0644 (La. 10/31/14), 152 So.3d 150.

The verdict rendered in this case indicates that the jury rejected the defendant's theory that he was not perpetrator of the instant offenses and that one or more elements of the crime was not supported by evidence. In reviewing the evidence presented at trial, we cannot say that the jury's determination was irrational under the facts and circumstances presented. *See Ordodi*, 946 So.2d at 662. The surveillance footage of both incidents shows that the same individual wearing the same attire committed both robberies. Matching attire was found in the defendant's motel room. Two witnesses at trial, Lieutenant Walden[5] and Mr. Robbins, identified the defendant as the perpetrator after viewing footage. Mr. Robbins had known the defendant for years and testified that it was obvious that it was the defendant shown on the footage committing the offenses. The jury was able to view the footage of both offenses and observed the defendant in the courtroom. Moreover, the defendant's fingerprint was found on an item used at the Purple Cow to manipulate the cash register drawer into opening. Further, the defendant used physical force against Ms. Breaux in committing the robbery at the Purple Cow. Each clerk testified that they were fearful at the time of the offenses, and the defendant was seen taking money in both stores.

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. *See State v. Calloway*, 07-2306 (La. 1/21/09), 1 So.3d 417, 418 (*per curiam*). A court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law in accepting a hypothesis of innocence that was not unreasonably rejected by the fact finder. *See State v. Mire*, 14-2295 (La. 1/27/16), 269 So.3d 698, 703 (*per curiam*). After a thorough review of the record, we are convinced that a rational trier of fact, viewing the

---

[5] As noted above, Lieutenant Walden testified that an additional tipster, whose identity was not disclosed at trial, identified the defendant as the perpetrator of the armed robberies in this case.

evidence in the light most favorable to the State, could find that on each count the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of armed robbery and the defendant's identity as the perpetrator of the offenses. This assignment of error lacks merit.

## OPINION TESTIMONY

In assignment of error number one, the defendant argues the trial court erred in denying his motion to exclude Mr. Robbins' opinion testimony, in which he identifies the defendant after viewing video footage of the robberies. The defendant claims that Mr. Robbins based his identification on information that he learned from the defendant's girlfriend, Jacqueline Flint. He argues the admission of Mr. Robbins' testimony as direct evidence of identification usurped the role of the jury. The defendant further contends the State was allowed to present inadmissible hearsay by Mr. Robbins claiming that Flint had also identified him. He notes Ms. Flint did not testify and was not subject to cross examination. Thus, he argues he was denied his right of confrontation. He concludes that the admission of Ms. Flint's hearsay and Mr. Robbins' opinion as to the central issue of identity cannot be harmless.

The testimony of a lay witness in the form of opinions or inferences, who is not testifying as an expert, is limited to those opinions or inferences that are rationally based on the perception of the witness and are helpful to a clear understanding of the testimony or the determination of a fact in issue. La. C.E. art. 701. A reviewing court must ask two questions to determine whether the trial court properly allowed lay opinion testimony: 1) was the testimony speculative opinion evidence or simply a recitation of or inferences from facts based upon the witness's observations, and 2) if erroneously admitted, was the testimony so prejudicial to the defense as to constitute reversible error. *State v. Morgan*, 12-2060 (La. App. 1 Cir. 6/7/13), 119 So.3d 817, 827. Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. La. C.E. art. 704.

At the outset, we note that Mr. Robbins never testified that Ms. Flint identified the defendant. Thus, there was no hearsay or confrontational error regarding any

9

statement by Ms. Flint. Mr. Robbins' testimony reflects that his identification of the defendant was based on his own familiarity with the defendant and his certainty that it was the defendant in the surveillance footage. It is well settled that a lay witness is generally permitted to draw reasonable inferences from his or her personal observations. If the testimony constitutes a natural inference from what was observed, the lay witness's opinion is not prohibited as long as the he states the observed facts as well. *State v. LeBlanc*, 05-0885 (La. App. 1 Cir. 2/10/06), 928 So.2d 599, 603. We find that Mr. Robbins' identification of the defendant was rationally based on his own familiarity with the defendant and his perception of the surveillance footage in evidence. Further the identity of the perpetrator was at issue. Thus, we find no merit in assignment of error number one.

## DEMONSTRATIVE EVIDENCE

In assignment of error number two, the defendant argues that the State's introduction of several items of demonstrative evidence was unduly prejudicial and impermissibly used to bolster identification evidence. Specifically, the defendant points to the introduction of a highlighted map, beanie caps, a photograph of a red folding knife, and a pair of gloves. As to the map, the defendant argues that there was no evidence to suggest that the route highlighted on the map was that taken by the perpetrator and that the route was near the defendant's residence and the two crime scenes, thus causing undue prejudice. Furthermore, the defendant argues that the red folding knife did not match either victim's description of the weapon used by the perpetrator. The defendant further argues that there was no evidence linking the beanies to the offenses and that the trial court erred in forcing the defendant to wear a beanie[6] in the presence of the jury, over the defendant's objection. Finally, the defendant contends that the trial court erroneously overruled his objection to the State's introduction of a pair of gloves during its closing argument where the State admitted that no gloves were found or identified as evidence in this case.

A contemporaneous objection is necessary to preserve an issue for appellate review. *See* La. C.Cr.P. art. 841(A); La. C.E. art. 103(A)(1). As the State notes on

---

[6] Although the defendant also mentions a scarf in his appellate brief, the record reflects that he was only required to pull a beanie cap down over his head and be viewed by the jury wearing it.

appeal, the defendant did not contemporaneously object to the admission of the highlighted map, the photograph of the knife, or to the beanie caps.[7] Therefore, on appeal, the defendant is precluded from challenging the admissibility of these items. Thus, we turn to the defendant's complaint of being required to don a cap in the presence of the jury and the State's use of gloves in its closing argument.

## Requirement that Defendant Don a Cap Before the Jury

Prior to resting its case, while the State's exhibits were being published to the jury, the State informed the trial court that it would be asking the defendant to put on one of the black beanie caps as "demonstrative." The defense attorney objected, arguing it would confuse the jury. The trial court overruled the objection, allowing the demonstration.

On appeal, the defendant confirms that his objection to being required to don the cap is to the lack of relevance and foundation for such, not to allege a violation of his privilege against self-incrimination. Although he admits the perpetrator shown in the videos was wearing a cap and that three caps were recovered from his motel room, he argues that the State presented no testimony from the store clerks linking the beanie caps to the robberies.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence that is not relevant is not admissible. La. C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. The district court is accorded great

---

[7] We note that the defense attorney initially entered a limited objection to the introduction of the map, asking that the State be required to inform the jury that the highlighted route on the map was not being used to show the route taken by the perpetrator in this case. The defense attorney stated, "Once it's clarified, I wouldn't have an objection." The State, as agreed, provided said clarification and then moved to admit the map into evidence. The trial court then asked if there was any objection, and the defense counsel stated, "No objection." We further note that the defense attorney expressly noted that he had no objection to the admission of the photographs taken during the search of the defendant's motel room, as the witness would be "subject to cross-examination." After the photographs were admitted and published, in moving for a mistrial based on a separate issue, the defense attorney entered an objection to the photographs in general, in violation of the contemporaneous objection requirement of La. C.Cr.P. art. 841. An objection made after the evidence is before the jury comes too late. *State v. Bretz*, 394 So.2d 245, 251 (La. 1981), *cert. denied*, 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981).

11

discretion in making relevancy determinations, and this Court will not disturb a relevancy ruling absent a clear abuse of discretion. *State v. Magee*, 11-0574 (La. 9/28/12), 103 So.3d 285, 321.

In this case, surveillance videos of both robberies show the perpetrator wearing a beanie-style cap. Ms. Powell, the Circle K clerk, testified that the perpetrator wore a "knitted cap." During the execution of the search warrant at defendant's motel room, police recovered three beanie style caps, including a black one, which were similar in style to those seen in the videos. Evidence showing that the perpetrator wore a beanie-style cap in both robberies and that similar style caps were found in defendant's motel room plainly has a tendency to establish the defendant's identity as the perpetrator. *See* La. C.E. art. 401. Further, contrary to the defendant's assertion, Ms. Powell's testimony does link the beanie cap to the robberies. Thus, requiring the defendant to don the black beanie cap at trial was relevant and did not cause confusion. We find the trial court did not abuse its discretion in allowing such.

## State's use/display of gloves during closing argument

Prior to presenting the State's closing argument, one of the prosecutors notified the trial court that she wanted to put on a pair of gloves for demonstrative purposes, noting that the perpetrator was wearing gloves, as shown in surveillance footage. The defense attorney objected on the basis of relevance. The trial court noted the objection in stating that the demonstration would be allowed.

Closing statement arguments shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. La. C.Cr.P. art. 774. Although they should not misstate the evidence, prosecutors are allowed wide latitude in choosing closing argument tactics. *See State v. Draughn*, 05-1825 (La. 1/17/07), 950 So.2d 583, 614, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). The trial court has broad discretion in controlling the scope of closing arguments, and this court will not reverse a conviction on the basis of improper closing argument unless thoroughly convinced that the remarks influenced the jury and contributed to the verdict. *State v. Jones*, 18-0085 (La. App. 1 Cir. 11/5/18), 2018 WL

5785450, *10, *writ denied*, 18-1993 (La. 4/22/19), 268 So.3d 294; *State v. Vansant*, 14-1705 (La. App. 1 Cir. 4/24/15), 170 So.3d 1059, 1063.

We find that the defendant was not prejudiced by the State's use of a pair of gloves during its closing argument. Nor do we find any trial error or an abuse of discretion in this regard. *See State v. Duncan*, 99-0778 (La. App. 4 Cir. 4/19/00), 761 So.2d 586, 593-94, *writ denied*, 00-1623 (La. 6/22/01), 794 So.2d 778; *State v. Sosa*, 04-507 (La. App. 5 Cir. 12/12/06), 948 So.2d 236, 239-40. The State informed the jury that there was no claim that any gloves were recovered or that the gloves shown were the ones used in the offenses, though there was an abundance of testimonial and video evidence to show that gloves were worn during the offenses. Further, we note that the overwhelming evidence of the defendant's identity as the perpetrator of the armed robberies negated any possibility of misidentification in this case. Thus, we do not find that the demonstration of gloves during closing arguments contributed to the verdict in this case.

Thus, we find no merit in assignment of error number two.

## OTHER CRIMES EVIDENCE

In assignment of error number three, the defendant challenges the admission of other crimes evidence. He specifically argues the trial court erred in denying motions for mistrial made when the State displayed Facebook comments about his arrest and when an officer referred to fingerprints from his criminal record. He further notes that another officer testified that he "interviewed the defendant previously" to this case. The defendant argues he was denied a fair trial due to the three references to his criminal history.

Louisiana Code of Evidence article 404(B)(1) provides that evidence of other crimes, acts, or wrongs is generally not admissible. To avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition. *State v. Lockett*, 99-0917 (La. App. 1 Cir. 2/18/00), 754 So.2d 1128, 1130, *writ denied*, 00-1261 (La. 3/9/01), 786 So. 2d 115.

13

Mistrial is a drastic remedy and warranted only when substantial prejudice will otherwise result to the accused to deprive him of a fair trial. *State v. Booker*, 02-1269 (La. App. 1 Cir. 2/14/03), 839 So.2d 455, 467, *writ denied*, 03-1145 (La. 10/31/03), 857 So.2d 476. A trial court's ruling denying a mistrial will not be disturbed absent an abuse of discretion. *State v. Givens*, 99-3518 (La. 1/17/01), 776 So.2d 443, 454.

Louisiana Code of Criminal Procedure article 770(2) provides for a mandatory mistrial when a remark is made by the judge, the district attorney, or a court official within the hearing of the jury and such remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. *State v. Dietrich*, 567 So.2d 623, 634 (La. App. 1 Cir.), *writ denied*, 568 So.2d 1079 (La. 1990). Louisiana Code of Criminal Procedure article 771 allows the State or the defendant to request that the court promptly admonish the jury to disregard irrelevant or prejudicial remarks made by the judge, district attorney, or a court official when the remarks are not within the scope of La. C.Cr.P. art. 770, or made by a person other than the judge, district attorney or court official, regardless of whether the remark is within the scope of La. C.Cr.P. art. 770.

The court may grant a mistrial on the defendant's motion if it is satisfied that an admonition is insufficient to assure the defendant a fair trial. La. C.Cr.P. art. 771; *State v. Murphy*, 16-0901 (La. App. 1 Cir. 10/28/16), 206 So.3d 219, 228. A mistrial under the provisions of La. C.Cr.P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for defendant to obtain a fair trial. *State v. Thompson*, 597 So.2d 43, 46 (La. App. 1 Cir.), *writ denied*, 600 So.2d 661 (La. 1992). The jurisprudence has held that an impermissible reference to another crime deliberately elicited from a witness by the prosecutor would be imputable to the State and would mandate a mistrial. However, unsolicited and unresponsive testimony is not chargeable against the State to provide a ground for mandatory reversal of a conviction. *Thompson*, 597 So.2d at 46. Moreover, ambiguous or obscure references to other crimes made without explanation or elaboration do not prejudice the defendant. *State v. Caminita*, 16-0121 (La. App. 1 Cir. 9/16/16), 203 So.3d 1100, 1106, *writ denied*, 16-2045 (La. 9/6/17), 224 So.3d 988.

14

Initially, we note that the content of the Facebook comments at issue, purportedly briefly shown to the jury while viewing the Facebook footage, is not apparent from the record. In moving for a mistrial, the defense attorney simply stated that the comments had been twice shown to the jury while displaying the SPD Facebook page, adding "I don't believe it is intentional." Nevertheless, the trial court admonished the jury to disregard any observed comments.[8] We further find that potential references to other crimes raised herein were ambiguous. Specifically, the testimony regarding a previous police interview of the defendant was elicited by the defense and was brief and obscure.[9] Further, testimony regarding the defendant's fingerprint card being obtained from a corrections division was not initiated by the State and did not consist of any explanation or elaboration as to the reason for any prior arrest or the defendant's fingerprints being located in the division.[10] Considering the record in this case, we do not find that the defendant was prejudiced as to the admission of the comments referenced herein. Further, we note that the trial court admonished the jury to disregard the comments. Thus, we conclude that the drastic remedy of a mistrial was not warranted in this case. We find no merit in assignment of error number three.

## EXCESSIVE SENTENCES

In his final assignment of error, the defendant argues his sentences are excessive. The defendant argues that the circumstances support sentences in the 25 year or less range, not 50 years.

---

[8] After defense counsel's objection to the Facebook comments, the State noted that it agreed to maximize the video such that the comments would not be visible, adding, "If it popped on the screen for a second, I apologize." In denying the motion for mistrial, the trial court stated, in part, "I don't think they had time to read it."

[9] In eliciting the testimony at issue, defense counsel questioned STPSO Detective Charles Smith about photographs in evidence, stating, "But those photographs were taken in the context of a separate issue; is that correct?" Defense counsel subsequently reiterated, "So the photographs were taken as a part of a separate investigation?" Defense counsel then added, "Into a separate matter. Yes?" Regarding each of the above three questions, the detective repeatedly responded in the affirmative without any elaboration, stating, "Yes, sir." Defense counsel then asked, "You didn't have contact with Mr. Barrington regarding the armed robbery, the alleged armed robbery, did you?" The detective then gave the response at issue, stating, "We had interviewed him previously." Thus, defense counsel's motion for mistrial came after four consecutive questions potentially opening the door to the ultimately given response at issue.

[10] We note that the Sergeant Gilley's brief and general reference to a fingerprint card being made "[w]henever somebody is arrested" was unsolicited, as it was in response to the State asking, "What is contained in State's Exhibit 19?"

After the sentences were imposed, defense counsel stated, "Judge, please note defense's objection." Defense counsel gave no basis for the objection. A thorough review of the record indicates that the defendant did not make or file a written motion to reconsider sentence following the trial court's imposition of the sentences. Under La. C.Cr.P. arts. 881.1(E) and 881.2(A)(1), the failure to make or file a motion to reconsider sentence shall preclude a defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. *See State v. Mims*, 619 So.2d 1059 (La. 1993) (*per curiam*). Moreover, a general objection to a sentence without stating specific grounds, including excessiveness, preserves nothing for appellate review. *State v. Campbell*, 16-1349, 16-1350 (La. App. 1 Cir. 4/12/17), 217 So.3d 1197, 1198 n.3. Thus, the defendant is procedurally barred from having assignment of error number five reviewed. *See State v. Brown*, 12-0752 (La. App. 1 Cir. 4/10/13), 2013 WL 1459156, *7; *State v. Duncan*, 94-1563 (La. App. 1 Cir. 12/15/95), 667 So.2d 1141, 1143 (*en banc per curiam*).

Accordingly, finding no merit to the defendant's assignments of error, we affirm his convictions and sentences.

**CONVICTIONS AND SENTENCES AFFIRMED.**

STATE OF LOUISIANA

VERSUS

DON PATRICK BARRINGTON, JR.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 KA 0789

 **HOLDRIDGE, J., concurs.**

I respectfully concur. I find that the trial court erred in requiring the defendant to put on a "black beanie cap" and in allowing the prosecutor to put on a pair of gloves for demonstrative purposes in the closing arguments. Both actions by the trial court were prejudicial to the defendant and confusing to the jury. Although I agree that the actions by the trial court were harmless errors, those errors nevertheless should be avoided by the trial court.